## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**RUSTY ENNIS-WHITE and**
**JONATHON ENNIS-WHITE,**
                      **:**

      **Plaintiffs,**
                              **Case No. 2:24-cv-1236**
                                  **Chief Judge Sarah D. Morrison**
     **v.**
                                 **Magistrate Judge Elizabeth A.**
                                 **Preston Deavers**

**NATIONWIDE MUTUAL**
**INSURANCE COMPANY,**
                      **:**

      **Defendant.**

## OPINION AND ORDER

In October 2022, Rusty and Jonathon Ennis-White, proceeding *pro se*, filed this action in Nevada state court, alleging various state-law claims against Nationwide Mutual Insurance Company and other defendants. (ECF No. 1, ¶¶ 1–2; *see also* ECF No. 1-3, PAGEID # 264.) Believing that the Ennis-Whites' claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), Nationwide removed the case to Nevada federal court. (ECF No. 1.) Upon review, the Nevada district court determined that the claims against Nationwide "relate[d] to" ERISA and transferred them to this Court pursuant to a forum selection clause. (ECF No. 47, PAGEID # 991–92.)

To ensure the existence of subject matter jurisdiction, this Court requested supplemental briefing from the parties on the issue of ERISA preemption. (ECF No. 65.) Both parties have filed their respective responses. (ECF Nos. 67, 68.) For the reasons set forth below, certain of the Ennis-Whites' claims are completely

preempted by ERISA, and the Court **ORDERS** them to file an Amended Complaint **within thirty (30) days** of the date of this Order setting forth these completely preempted claims directly under ERISA. With respect to the claims <u>not</u> completely preempted by ERISA, the Court will exercise supplemental jurisdiction over them to the extent the Ennis-Whites choose to assert them in their Amended Complaint.

## I. FACTUAL BACKGROUND

In September 2015, Nationwide hired Rusty Ennis-White to serve as a commercial claims manager on the Nationwide Agribusiness Insurance Company Large Loss claims team. (First Amended Complaint ("FAC"),[1] ECF No. 1-2, ¶ 11; *id.*, PAGEID # 87, 107.) Among other duties, Rusty[2] was tasked with auditing claims files to ensure compliance with claims handling guidelines. (*Id.*, ¶ 15.) As a Nationwide employee, his employer-sponsored health plan was the Nationwide Insurance Companies and Affiliates Plan for Your Time and Disability Income Benefits (the "Plan"), which the parties agree is governed by ERISA. (*Id.*, ¶¶ 9, 136, 138, 213; ECF No. 6, PAGEID # 520; ECF No. 67-1.)

### A. Rusty raises concerns about Nationwide's practices.

By virtue of his auditing function, Rusty became aware of what he thought were poor claims management and reserving practices at Nationwide. (FAC, ¶¶ 15, 18.) He was also troubled by what he perceived to be ethical implications

_____

[1] Shortly after filing suit in state court but before the case was removed to federal court, the Ennis-Whites amended their Complaint to name two new defendants and add related factual allegations. (FAC, ECF No. 1-2.)

[2] The Court will refer to the Ennis-Whites individually by their first names to avoid confusion.

surrounding certain of Nationwide's billing decisions in September 2016. (*Id.*, ¶¶ 16–17.) Rusty informed company management, including his supervisor (Director Kimberly Bezy), about his concerns to no avail. (*Id.*, ¶¶ 16, 21.)

Rusty elevated his complaints to Nationwide's Office of Ethics. (FAC, ¶¶ 16, 17, 23.) Rusty believes that these complaints "changed [his] work dynamic at [Nationwide] and made him a target for systemic repeated retaliation." (*Id.*, ¶¶ 23, 24, 26, 27, 29.) He alleges that Nationwide created challenging working conditions for him by limiting his ability to manage his team. (*Id.*, ¶¶ 28, 29.) Nevertheless, Rusty continued to raise concerns to Director Bezy and other Nationwide leadership, but he saw little effort to fix the issues he identified. (*Id.*, ¶¶ 30–31, 38–39.) Rusty also attempted to post out of his role and move to another Nationwide group or area. (*Id.*, ¶ 40.)

In response, Director Bezy held two one-on-one meetings with Rusty. During the first meeting in July 2017, she suggested that he would be happier working for another company and that Nationwide would likely waive certain provisions in his employment agreement to enable him to separate from the company. (*Id.*, ¶¶ 39–40.) She also addressed Rusty's attempts to leave the Agribusiness group, making it clear that he could not leave the group without her support, which she declined to provide. (*Id.*, ¶ 40.) At the second meeting in October 2017, Director Bezy asked Rusty to accept a demotion to an individual contributor consultant. (FAC, ¶ 45.) Although Rusty took the demotion, it (and his meetings with Director Bezy) further

reinforced his view that Nationwide was retaliating against him because he voiced his concerns. (*Id.*, ¶¶ 40, 46–47, 55.)

### B. Rusty requests an accommodation and seeks medical leave.

In November 2018, Rusty broke his hand and had to wear a cast from his elbow to his fingers. (FAC, ¶ 57; *id.*, PAGEID # 172.) He requested accommodations from Nationwide in the form of transcription software. (FAC, ¶¶ 57, 58; *id.*, PAGEID # 172.) Nationwide denied his request, instead advising him of the option to take disability leave. (FAC, ¶¶ 57, 58.) Rusty alleges that due to staffing levels at the time, he could not take disability leave, so he worked with no accommodations. (*Id.*, ¶¶ 58, 59.)

Additionally, in early 2022, Rusty notified his supervisor that his health was deteriorating after he and Jonathan had a negative experience[3] outside of work that triggered his post-traumatic stress disorder ("PTSD"). (FAC, ¶¶ 122, 124.) As a child, Rusty suffered rape and abuse, leaving him with anxiety and other mental health challenges, including a rare form of dyslexia. (*Id.*, ¶¶ 122, 124, 125.) Based on this, Rusty submitted a claim for medical leave under the Family and Medical Leave Act ("FMLA") and short-term disability under the Plan. (*Id.*, ¶¶ 128, 132.) At some time unspecified in the FAC, Rusty also submitted a claim for long-term disability under the Plan. (*Id.*, ¶ 172.) Beginning March 21, 2022, Nationwide placed Rusty on short-term disability leave. (*Id.*, ¶ 197; *id.*, PAGEID # 190.)

---

[3] The FAC includes a detailed description of the Ennis-Whites' experience, but the Court omits it from this Opinion because it is only peripherally connected to the claims against Nationwide. (FAC, ¶¶ 60–120.)

4

As part of the process of seeking disability leave, Rusty provided documentation of his injury, treatment, and disability to The Hartford, Nationwide's third-party Plan administrator. (*Id.*, ¶¶ 127, 129.) Rusty also produced Individualized Education Program ("IEP") documents that confirmed his diagnosis but that also included details of his childhood abuse, so he asked The Hartford to keep the IEP confidential and not share it with Nationwide. (*Id.*, ¶¶ 133, 134.) The Hartford indicated that Rusty's claim would likely be denied because he had not seen the "right" or "correct" doctors. (*Id.*, ¶¶ 128–130.) When Rusty requested a copy of the Plan, he was directed to Kathy Mull, Nationwide's vendor manager for The Hartford. (*Id.*, ¶¶ 132, 136.)

Ms. Mull called Rusty on May 2, 2022, telling him that the call was "off the books," meaning she would not keep records, notes, or call logs to memorialize the call. (FAC, ¶¶ 137, 158, 209; *id.*, PAGEID # 176, 179.) She said that Rusty "couldn't use [his] past history of sexual abuse and dyslexia to avoid work." (*Id.*, ¶¶ 136–37.) Instead, she advised that Nationwide could provide him with a typewriter and a spelling device as a reasonable accommodation. (*Id.*, ¶ 137.) Ms. Mull also told Rusty that his FMLA and short-term disability claims would be denied unless he submitted to an independent medical examination at Nationwide's direction with doctors who were not on the traditional panel of doctors under the Plan. (*Id.*, ¶¶ 138, 209.) From their conversation, Rusty believed (and The Hartford later confirmed) that Ms. Mull knew of the IEP that he had provided to The Hartford, and he suffered a severe panic attack as a result. (*Id.*, ¶¶ 138, 157, 159.)

Rusty viewed his interaction with Ms. Mull and her promotion of an "off-the-books" short-term disability program as inappropriate and non-compliant with ERISA, so he elevated the conversation to Nationwide leadership. (FAC, ¶¶ 138, 158; *id.*, PAGEID # 175.) AVP Tina Thornton then contacted Rusty and told him that he had "misunderstood" Ms. Mull, that Nationwide did not have his IEP or behavioral health records, and that he may want to speak with someone at the company about a possible separation package. (*Id.*, ¶ 211; *id.*, PAGEID # 180.)

### C.    Rusty submits a workers' compensation claim.

After his call with Ms. Mull, Rusty filed a workers' compensation claim for his panic attack. (FAC, ¶¶ 146, 147; *id.*, PAGEID # 190.) Initially, Nationwide failed to execute the required Employee Claim ("C-3") form. (*Id.*, ¶ 197.) When Rusty complained about this failure, Nationwide executed the C-3 form, but it included erroneous information regarding his wages. (*Id.*, ¶¶ 168, 190, 191.)

Rusty raised this problem to Nationwide leadership. (FAC, ¶ 163.) Vinita Clements (EVP of Human Resources) assured Rusty that "Nationwide has not made any intentional misstatements in regard to the processing of your workers' compensation claim." (*Id.*, ¶ 164.) Ms. Clements also told Rusty that the issue would be handled by Nationwide's outside counsel, Lisa Kathumbi and John Lavery, in accordance with its workers compensation coverage. (*Id.*, ¶¶ 164, 165.) In September 2022, Mr. Lavery sent a letter to a Compliance Audit Supervisor at the Nevada Division of Industrial Relations that read, in relevant part:

> [A] cursory review of Mr. Ennis's complaint makes it clear that he has an agenda that extends far beyond the simple filing of an industrial

6

insurance claim or the documents associated therewith. At no point
has his employer and/or its third party administrator acted or failed to
act in a manner inconsistent with the mandates or spirit of the Nevada
Industrial Insurance Act.

(*Id.*, ¶¶ 195, 198.) Rusty alleges that his workers' compensation claim was

ultimately denied. (*Id.*, ¶ 149.)

### D. Nationwide moves to terminate Rusty and restaff his position.

On August 31, 2022, while Rusty was out on short-term disability leave and

the day after he engaged Ms. Clements concerning his workers' compensation form,

Nationwide informed him that it was moving to restaff his position. (FAC, ¶¶ 169,

172, 228.) Nationwide indicated that Rusty must either return to work at or before

the end of his short-term disability leave (which was set to expire at the end of

September 2022) or he would be terminated. (*Id.*, ¶¶ 173, 229.) As the call was

ending, Rusty started to have a panic attack. (*Id.*, ¶ 172.)

After his conversation with Nationwide, Rusty contacted The Hartford for a

determination with respect to his long-term disability claim but was told his claim

was being denied. (FAC, ¶ 172.) Rusty unsuccessfully appealed the denial. (*Id.*,

¶ 232.) He decided to return to Nationwide to avoid losing his health insurance and

other benefits. (*Id.*, ¶ 177.)

In early September 2022, Rusty received a letter from Ms. Kathumbi that he

interpreted as prohibiting him from making any further claims against Nationwide.

(FAC, ¶¶ 179, 180.) He suffered a panic attack and resigned from Nationwide

shortly thereafter on October 5, 2022. (*Id.*, ¶¶ 214, 233.) Months later, the Nevada

Equal Rights Commission issued Rusty a right-to-sue letter permitting an action

against Nationwide. (*Id.*, ¶ 185.)

## II. PROCEDURAL HISTORY

The FAC sets forth eight causes of action against Nationwide:

- Defamation Per Se (Count I);
- Intentional Infliction of Emotional Distress (Count II);
- Negligent Infliction of Emotional Distress (Count III);
- Negligent Supervision (Count IV);
- Disability Discrimination (Count V);
- Retaliation (Count VI);
- Loss of Consortium (Count IX); and
- Punitive Damages (Count XI).

(FAC, ¶¶ 186–234, 250–251, 256.) Although the Prayer for Relief in the FAC is blurred (*id.*, PAGEID # 80), the Ennis-Whites sought in their original Complaint compensatory and punitive damages, as well as injunctive relief in the form of "the appointment of an independent monitor to oversee Nationwide's practices related to disability claims and ethical procedures." (ECF No. 1-3, Prayer for Relief.)

In November 2023, Nationwide removed the case to Nevada federal court based on ERISA preemption and moved to dismiss the claims against it. (ECF Nos. 1, 6.) The Ennis-Whites opposed dismissal and moved to remand the case back to state court. (ECF Nos. 11–13.) The Nevada district court determined that the claims against Nationwide "relate to" ERISA and are subject to the Plan's forum selection clause. (ECF No. 47, PAGEID # 991–92.) Accordingly, the claims (and Nationwide's pending motion to dismiss) were transferred to this Court. (ECF No. 47.) Shortly thereafter, the Ennis-Whites moved for leave to file a Second Amended Complaint ("SAC"), seeking to add claims, add the Plan and The Hartford as Defendants, and remove all other defendants. (ECF No. 59-1.)

On September 17, 2024, the Court denied without prejudice Nationwide's motion to dismiss and the Ennis-Whites' motion to amend. (ECF No. 65.) The parties were instructed to brief the issue of whether the Court has subject matter jurisdiction over this action, including whether ERISA completely preempts the Ennis-Whites' claims in the FAC. (*Id.*) That issue is now ripe for review.

## III. ANALYSIS

The Court recited the law applicable to its subject matter jurisdiction analysis in its September 2024 Order. (ECF No. 65.) For ease of reference and for purposes of completion, that discussion is reproduced below and is followed by the Court's evaluation of the Ennis-Whites' claims.[4]

### A. Subject Matter Jurisdiction

Federal courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

"[A]ny civil action brought in a State court of which the district courts of the

---

[4] This Court applies the law of its own circuit to evaluate federal question jurisdiction. *See, e.g.*, *Hueso v. Barnhart*, 948 F.3d 324, 337 (6th Cir. 2020) (acknowledging "the background norm that each court should apply its own precedent on the meaning of federal law"); *Isaac v. Life Invs. Ins. Co. of Am.*, 749 F. Supp. 855, 863 (E.D. Tenn. 1990); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) ("[T]he law of a transferor forum on a federal question … merits close consideration, but does not have stare decisis effect in a transferee forum.").

United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A defendant who removes a case to federal court carries the burden of establishing federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871–72 (6th Cir. 2000). "[F]ederal courts must construe the removal statutes strictly, resolving all doubts in favor of remand." *Kim v. Lee*, No. 1:21-CV-613, 2021 WL 5494326, at *1 (S.D. Ohio Nov. 23, 2021) (Cole, J.) (citation omitted).

A federal court is obliged to *sua sponte* examine jurisdictional issues, including the existence of subject matter jurisdiction. *Capron v. Van Noorden*, 6 U.S. 126, 127 (1804); *Clark v. United States*, 764 F. 3d 653, 657 (6th Cir. 2014); *see also In re DePuy Orthopaedics,* 953 F.3d. 890, 892 (6th Cir. 2020) ("[F]ederal courts must catch jurisdictional defects at all stages of a case, even when substantial resources have already been invested in it."). "The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). "A federal court may remand a case *sua sponte* where the allegations of the complaint which gave rise to the federal jurisdictional basis are insufficient to confer subject matter jurisdiction on the court." *Lexington-Fayette Urban County Government Civil Service Com'n v. Overstreet*, 115 Fed. App'x 813, 816–17 (6th Cir. 2004).

The presence or absence of federal-question jurisdiction is governed by the

"well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). A defense is not part of a plaintiff's properly pleaded statement of his claim. *Id.* (citations omitted). Thus, "a case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint[.]" *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14 (1983).

A corollary to the well-pleaded complaint rule is the principle that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet*, 522 U.S. at 475 (quoting *Franchise Tax Bd.*, 463 U.S. at 22). If a court finds that a plaintiff has "artfully pleaded" claims in this manner, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. *Id.* The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claims. *Id.*; *see also Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 944 (6th Cir. 1994) (citations omitted) ("[F]ederal question jurisdiction exists when the plaintiff's claim occurs in an area of the law which Congress has so completely preempted that any complaint raising a claim in that area necessarily presents a federal issue.").

## B.   ERISA Preemption

Nationwide removed the instant case on the ground that ERISA preempts

some or all the Ennis-Whites' claims.[5] (ECF No. 1, ¶¶ 10, 14.) ERISA is a comprehensive federal act designed to regulate employee welfare and pension benefits plans. *Little v. UNUMProvident Corp.*, 196 F. Supp. 2d 659, 664 (S.D. Ohio 2002) (Graham, J.) (citing *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650–51 (1995)). It was enacted to "replace a patchwork scheme of state regulation of employee benefit plans with a uniform set of federal regulations." *Id.* (citing *FMC Corp. v. Holliday*, 498 U.S. 52, 56–60 (1990)); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53–54 (1987) (ERISA's enforcement scheme "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress

---

[5] Alternatively, Nationwide argues that the requirements for diversity jurisdiction are met. (ECF No. 67, PAGEID # 140); *see* 28 U.S.C. § 1332(a)(1). Although there is complete diversity among the parties in this case—the Ennis-Whites are Nevada residents and Nationwide is incorporated with a principle place of business in Ohio (FAC, ¶¶ 1–2)—Nationwide has not shown that the amount-in-controversy threshold has been met. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (placing burden on removing defendant to show by preponderance of evidence that amount-in-controversy requirement has been met). The Notice of Removal is silent as to the jurisdictional amount, and the FAC does not state a particular sum (though the Court suspects such a statement appears on the final page, which is blurred). (ECF No. 1; FAC, PAGEID # 80.) Failure to adequately plead the amount in controversy requirement may be cured by the presence of "clear allegations ... that the case involved a sum well in excess of the $75,000 minimum." *Hayes*, 266 F.3d at 573. Nationwide emphasizes that the Ennis-Whites are seeking "general and special damages" and "punitive and exemplary damages," which both "must be considered to the extent claimed in determining jurisdictional amount." (ECF No. 67, PAGEID # 140.) But, considering the Ennis-Whites' claims and recognizing that their original Complaint requested general and special damages only "in an amount excess of $15,000" (ECF No. 1-3, PAGEID # 264), it is not clear that the amount in their FAC, even accounting for punitive damages, exceeds $75,000. Accordingly, Nationwide has not met its burden of demonstrating satisfaction of the amount in controversy requirement for diversity jurisdiction.

rejected in ERISA"). There is no dispute that the Plan is governed by ERISA. (ECF No. 67-1, PAGEID # 157 ("The Plan is intended to qualify as an employee welfare benefit plan, as described under ERISA Section 3(1)."); FAC, ¶ 132 (referencing Rusty's exercise of his "rights under ERISA to request a copy" of the Plan), ¶ 213 ("[The Plan] is an ERISA based product that integrates short-term disability, long-term disability, and paid time off.").

There are two forms of ERISA preemption: (1) express preemption, and (2) complete preemption. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987).

*First*, pursuant to 29 U.S.C. § 1144(a), ERISA expressly preempts any state laws that "relate to" an ERISA plan. Express preemption is strong and "displace[s] all state laws that fall within its sphere[.]" *K.B. by & through Qassis v. Methodist Healthcare—Memphis Hosps.*, 929 F.3d 795, 800 (6th Cir. 2019) (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988) (citation omitted)). Courts broadly interpret the phrase "relate to," such that a state-law claim is expressly preempted if "it has connection with or reference to that plan," regardless of the label placed on the claim or the plaintiff's intent or design. *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991). Only those state law claims "whose effect on employee benefit plans is merely tenuous, remote or peripheral" are not expressly preempted. *Id.*

*Second*, pursuant to 29 U.S.C. § 1132(a), any state-law cause of action "that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is completely preempted. *Milby v. MCMC LLC*, 844 F.3d 605, 609 (6th Cir.

2016) (internal quotations and citation omitted). Complete preemption applies to a state-law claim that falls "within the scope" of ERISA's civil enforcement provision, which allows a "participant" or "beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Taylor*, 481 U.S. at 66. However, § 1132(a) does not encompass claims that stem from a duty that "is not derived from, or conditioned upon, the terms" of an ERISA plan. *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013). Thus, a claim falls within the scope of § 1132(a) when the plaintiff (1) "complains about [benefits] to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan'; and (2) does not allege the violation of any 'legal duty (state or federal) independent of ERISA or the plan terms.'" *Id*. at 613 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). Additionally, employers may not "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan … or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140. This prohibition "is enforced exclusively through § 1132." *Kalo v. Moen Inc.*, 93 F. Supp. 2d 869, 875, 875 n.4 (N.D. Ohio 2000) (citing 29 U.S.C. § 1140).

Distinguishing between express preemption and complete preemption is key to determining whether a preemption defense raises a federal question supporting

federal subject matter jurisdiction. Although express preemption applies more broadly, it does not confer federal subject matter jurisdiction standing alone. *Franchise Tax Bd.*, 463 U.S. at 25–27 (express preemption alone is insufficient to convert a state-law claim into an action arising under federal law); *Alexander*, 13 F.3d at 944. "The mere fact that ERISA preemption under § 1144(a) may be raised as a defense, or is in actuality a defense, does not confer jurisdiction or authorize removal." *Taylor-Sammons v. Bath*, 398 F. Supp. 2d 868, 872 (S.D. Ohio 2005); *see also K.B.*, 929 F.3d at 800 ("[S]imply because a state law claim might fall within § 1144(a)'s broad preemptive reach does not alone suffice to take it outside the normal rule that a federal preemption defense does not make a case with state law claims removable to federal court."). On the other hand, complete preemption converts a state-law claim to a federal question for purposes of subject matter jurisdiction. *Id.* at 872; *see also Loffredo v. Daimler, AG*, 500 Fed. App'x. 491, 500 (6th Cir. 2012) (Moore, J., concurring) ("[S]tate-law claims that are completely preempted are, in fact, federal claims.").

In sum, express preemption "is a defense; it is grounds for dismissal but not for removal." *Zahuranec v. CIGNA Healthcare, Inc.*, No. 1:19CV2781, 2020 WL 7335286, at *9 (N.D. Ohio Dec. 14, 2020) (quoting *Loffredo*, 500 Fed. App'x. at 500 (Moore, J., concurring)). Complete preemption "is grounds for removal but not grounds for dismissal." *Zahuranec,* 2020 WL 7335286, at *9.

### C.    Whether ERISA Preempts the Ennis-Whites' Claims

"The existence of subject matter jurisdiction is determined by examining the

complaint as it existed at the time of removal." *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). As explained above, claims merely "related to" ERISA are not removable. *Zahuranec*, 2020 WL 7335286, at *9. Thus, although the Nevada federal court adopted Nationwide's position that the Ennis-Whites' claims "relate to" Rusty's benefits under the Plan (ECF No. 47), this conclusion is not a clear finding of subject matter jurisdiction.[6] The Court therefore looks to the eight claims that the Ennis-Whites assert in their FAC against Nationwide to determine if ERISA completely preempts the claims such that removal was proper.

### 1. Defamation *Per Se* (Count I)

The Ennis-Whites first assert a claim for defamation *per se* arising from Nationwide's erroneous completion of Rusty's C-3 form and Mr. Lavery's related September 2022 letter. (FAC, ¶¶ 187, 195.) Specifically, the Ennis-Whites allege that the letter "challeng[ed] [Rusty's] character for requesting an investigation into the propriety of the Workers Compensation process" and "was a published attack …

---

[6] On this point, Nationwide recites the familiar law-of-the-case doctrine and observes that transferee courts (like this Court) should "be loathe" to revisit prior decisions of a coordinate court (like the Nevada district court) "in the absence of extraordinary circumstances." (ECF No. 67, PAGEID # 143 (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)).) The law-of-the-case doctrine, however, "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912) (citations omitted). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance," particularly where, as here, the decision relates to subject matter jurisdiction. *See Christianson*, 486 U.S. at 817 ("[E]ven if the Seventh Circuit's decision was law of the case, the Federal Circuit did not exceed its power in revisiting the jurisdictional issue[.]"); *In re DePuy Orthopaedics*, 953 F.3d at 893 (citation omitted) ("A federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation[.]").

designed to disparage him before a regulatory group." (*Id.*, ¶¶ 195–97, 201, 204.)

The parties agree that ERISA does not completely preempt this claim, which has nothing to do with Rusty's disability benefits or his participation in the Plan. (ECF No. 68, PAGEID # 249–50; ECF No. 67, PAGEID # 152.) This claim is not equivalent to an ERISA enforcement action. *See, e.g.*, *Hahn v. Rauch*, 602 F. Supp. 2d 895, 908 (N.D. Ohio 2008) (defamation claim not completely preempted). Accordingly, this claim is not subject to complete preemption.

### 2. Intentional and Negligent Infliction of Emotional Distress (Counts II and III)

Next, the Ennis-Whites bring two claims for Rusty's alleged emotional distress stemming from Nationwide's processing of his FMLA, short-term, and long-term disability claims, its conduct of securing information about his "mental state and past history of abuse in an effort to pressure him to return to work and abandon benefits," and Ms. Kathumbi's cease-and-desist letter to him. (FAC, ¶¶ 208–09, 213–14, 217.)

In essence, Rusty argues that he experienced emotional distress because of how Nationwide administered or "leveraged" its "disability program," which he agrees is covered by the Plan.[7] (FAC, ¶¶ 213–14.) He refers to his interaction with Ms. Mull as an "ERISA event" and complains about Nationwide's conduct vis-a-vis his IEP documentation and pressuring him to abandon long-term disability

---

[7] Throughout the FAC, the Ennis-Whites occasionally refer to an "FMLA/STD program." (*See, e.g.*, FAC, ¶ 213.) Although Rusty alleges that he sought FMLA leave (*see, e.g.*, FAC, ¶ 222), the FAC does not assert an FMLA claim, nor does the Plan reference or incorporate the FMLA. (ECF No. 67-1.)

benefits. (*Id.*, ¶ 209); *Gardner*, 715 F.3d at 613. Because his intentional and negligent emotional distress claims based on this conduct would not exist if the Plan did not exist, ERISA completely preempts these claims.[8] *See, e.g.*, *Palagyi v. Canada Nat.*, No. 1:13-CV-01734, 2013 WL 5519654, at *2 (N.D. Ohio Oct. 2, 2013).

### 3. Negligent Supervision (Count IV)

The Ennis-Whites argue that Nationwide had a duty to protect Rusty from its employees, agents, and partners and that it breached this duty by allowing its employees to "leverag[e] an 'off-the-books' disability program designed to intimidate workers to abandon benefits" and "prevent[] employees [from] converting to long-term disability." (FAC, ¶ 220; *id.*, PAGEID # 175 ("The issue that I'm having is that Nationwide is administering an ERISA plan which requires, under ERISA statute, to maintain the ERISA record.").)

This claim is completely preempted by ERISA. Although negligent supervision claims are typically based on a duty independent of ERISA, the negligence that the Ennis-Whites allege is the negligent processing and denial of Rusty's request for disability benefits, which arise solely from the Plan. *See Nat'l Mgmt. Ass'n, Inc. v. Transamerica Fin. Res., Inc.*, 197 F. Supp. 2d 1016, 1025 (S.D. Ohio 2002) (Rice, J.) (discussing ERISA's provision of remedies for fiduciary breach). This claim centers on whether Nationwide's employees negligently administered the

---

[8] The FAC is not a model of clarity. To the extent the Ennis-Whites allege claims for emotional distress stemming from Rusty's workers' compensation submission or Nationwide's actions unrelated to Plan administration, these claims are likely not completely preempted. (*See, e.g.*, FAC, ¶ 213.)

Plan and is therefore completely preempted by ERISA. *See Hogan v. Jacobson*, 823 F.3d 872, 881 (6th Cir. 2016) (finding negligence *per se* claim arising from defendants' review of plaintiff's medical file in connection with disability-benefits determination was "subsumed entirely within the denial of benefits under an ERISA plan").

### 4.  Disability Discrimination (Count V)

The Ennis-Whites' disability discrimination claim appears to be based in part on Ms. Mull's comments that Rusty "couldn't use [his] past history of sexual abuse and dyslexia to avoid work." (FAC, ¶¶ 136–37, 222.) Ms. Mull made these challenged statements in her role as Nationwide's vendor manager for The Hartford and assisting in the administration of the Plan. (*Id.*, ¶¶ 132, 136.) Rusty referred to this interaction with Ms. Mull as an "ERISA event" resulting in, among other harm, his "loss of benefits." (*Id.*, ¶¶ 209, 222.) This claim is also completely preempted by ERISA because the allegedly discriminatory conduct was indisputably part of the process used to assess Rusty's request for a benefit payment under the Plan.[9]

### 5.  Retaliation (Count VI)

The Ennis-Whites allege numerous instances of retaliation against Rusty. (FAC, ¶¶ 222–34.) To the extent Rusty asserts that Nationwide retaliated against

---

[9] Rusty also seems to be alleging disability discrimination on the grounds that Nationwide knew of his disability but denied him reasonable accommodations and took efforts to restaff his position. (*See, e.g.*, *id.*, ¶¶ 137, 222, 231; *id.*, PAGEID # 178; ECF No. 11, PAGEID # 573.) To the extent the Ennis-Whites assert such a typical state-law discrimination claim, it would not be displaced by the civil enforcement provisions of ERISA.

him based on his complaints prior to his short-term disability leave about the company's claims management and reserving practices (*see e.g.*, *id.*, ¶¶ 23, 31, 40, 42) or based on Nationwide's actions surrounding his workers' compensation submission (*see e.g.*, *id.*, ¶¶ 146, 168), his claim is not completely preempted by ERISA. (*See also* ECF No. 68, PAGEID # 243, 246, 248 (alleging that Nationwide's retaliatory actions were "a direct response to [Rusty's] attempts to bring attention to Nationwide's financial misconduct," including "manipulating claims reserves and securing unjustified premium increases").)

But, with respect to allegations of retaliation through Nationwide's management of the Plan, the retaliation claim is completely preempted by ERISA. (*See, e.g.*, FAC, ¶ 232 ("[Nationwide's] retaliation didn't simply stop at a job restaff but rather continued because of [Nationwide's] ability to control [Rusty] by way of [its] involvement in the Long-Term disability process.").) Rusty claims that he was wrongfully denied long-term disability benefits and forced to return to work as the result of retaliation. (*Id.* ("[Rusty's] second line appeal was quickly denied in part because The Hartford had direct knowledge of [Nationwide's] desire for denial of [Rusty's] claims.").) The Ennis-Whites seek to hold Nationwide liable for interference with Rusty's benefits under the Plan, which may be accomplished through § 1140 and ERISA's civil enforcement mechanism. *See Kalo*, 93 F. Supp. 2d at 875; *Graf v. Daimler Chrysler Corp.*, 190 F. Supp. 2d 1002, 1008 (E.D. Mich. 2002) ("[A] state law cause of action which purports to set forth a claim that a person has been discharged, discriminated against, retaliated against, harmed, etc.,

for claiming or attempting to claim his/her right to receive (or continue to receive) ERISA benefits, falls directly under the exclusive remedy Congress created in § 510.").

### 6.    Loss of Consortium (Count IX)

The Ennis-Whites allege that Jonathon "was deprived of the support of a loving and functional husband and was forced to act as the caregiver on days when [Rusty] refused to get out of bed." (FAC, ¶ 251.) The FAC asserts that they "share a close connection that has been placed under great stress as a result of the negligence of [Nationwide]," such that Jonathon "was left feeling hopeless after [Nationwide's] actions against [Rusty's] interest." (*Id.*)

In the context of the complete preemption inquiry, "a plaintiff's claims are not equivalent to an ERISA civil enforcement action where the plaintiff is not a plan participant or beneficiary with standing to assert claims under ERISA." *Taylor-Sammons*, 398 F. Supp. 2d at 875; *see also* 29 U.S.C. § 1132(a)(1)(B). Nationwide admits that Rusty qualifies as a participant. (ECF No. 6, PAGEID # 520); *see also Sears v. Chrysler Corp.*, 884 F. Supp. 1125, 1131 (E.D. Mich. 1995). There are no allegations, however, that Jonathon is a current or former Nationwide employee or that he is or was a participant in the Plan. Thus, he may only bring claims under § 1132(a) if he is a beneficiary, or "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Nowhere in the FAC do the Ennis-Whites allege Jonathon's status as a beneficiary, and the Plan does not list him as such. (ECF No.

21

67-1.) Consequently, Jonathon lacks standing to assert any claims under ERISA's enforcement provision, including a claim for loss of consortium that relates solely to his alleged suffering, and that claim is therefore not completely preempted. *See, e.g.*, *Benefit Consulting All., LLC v. AIG Life Ins. Co.*, No. 3:07-1136, 2008 WL 11510630, at *5 (M.D. Tenn. Sept. 26, 2008).

### 7.  Punitive Damages (Count XI)

Finally, the Ennis-Whites assert a claim for punitive damages based on Nationwide's conduct. (FAC, ¶ 257.) As Nationwide admits (ECF No. 67, PAGEID # 152), this claim is not subject to complete preemption. To the extent the Ennis-Whites may maintain this claim as a standalone cause of action, it is not completely preempted because extracontractual compensatory and punitive damages are not available under ERISA. *Varhola v. Doe*, 820 F.2d 809, 817 (6th Cir. 1987); *Little*, 196 F. Supp. 2d at 671–72.

### D.  Next Steps

Because five of the eight claims in the FAC—intentional and negligent infliction of emotional distress (Counts II and III), negligent supervision (Count IV), disability discrimination (Count V), and retaliation (Count VI)—are based in part or entirely on allegations supporting complete ERISA preemption, they were properly removed to federal court, and this Court may exercise federal question jurisdiction over them. This does not address, however, that these claims are not properly pleaded in the FAC under ERISA. How to treat a state-law claim once it has been removed to federal court based on complete preemption has created a split of

opinion. *See Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 814–15 (S.D. Ohio 2003) (Rice) (discussion). In the Sixth Circuit, courts often grant a plaintiff leave to file an amended complaint that recasts the completely preempted claims (which, despite their state-law verbiage, are federal claims) in the language of ERISA. *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 411 (6th Cir. 1998); *Erbaugh v. Anthem Blue Cross and Blue Shield*, 126 F.Supp.2d 1079, 1082 (S.D. Ohio 2000) (Rice, J.); *B-T Dissolution*, 101 F. Supp. 2d at 932 n.3, 948.

The Court adopts this approach and **ORDERS** the Ennis-Whites to file an Amended Complaint **within thirty (30) days** of the date of this Order setting forth their five completely preempted claims directly under ERISA. To the extent a claim is based in part on allegations that do not lend themselves to complete preemption (i.e., the workers' compensation proceedings or Nationwide's actions unconnected to its administration of the Plan), the Ennis-Whites may assert a distinct claim founded on those facts separately from their ERISA claims, which will fall within this Court's supplemental jurisdiction, as explained below.

Looking to the claims not subject to complete preemption—defamation *per se* (Count I), loss of consortium (Count IX), punitive damages (Count XI), and the non-Plan-related allegations supporting the intentional and negligent infliction of emotional distress, disability discrimination, and retaliation claims—they remain state-law claims and may be adjudicated only through supplemental jurisdiction. *See* 28 U.S.C. § 1367(a); 28 U.S.C. § 1441(c). Once a court has original jurisdiction over some claims in the action, it can exercise supplemental jurisdiction over

additional claims that are part of the same case or controversy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Supplemental jurisdiction is a matter of judicial discretion. *Id.* at 726. In this case, the Court will exercise supplemental jurisdiction over the Ennis-Whites' non-completely preempted claims to further judicial economy and because they also arise from Rusty's employment relationship with Nationwide. If the Ennis-Whites still seek to maintain these non-completely preempted claims, they are **ORDERED** to assert them separately in the Amended Complaint.

## V.    CONCLUSION

The Court **ORDERS** the Ennis-Whites to file an Amended Complaint **within thirty (30) days** of the date of this Order setting forth their completely preempted claims directly under ERISA and any non-completely preempted claims as directed in this Order. The Ennis-Whites are further **ORDERED** to include The Hartford and the Plan as Defendants (along with Nationwide) in their Amended Complaint.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**